## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Robert Laurent,

                Plaintiff,

      v.

Mortgage Electronic Registration Systems,
Inc.; and U.S. Bank, N.A.,

                Defendants.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 11-2585 ADM/JJG

---

Andrew Dosdall, Esq., Christopher P. Parrington, Esq., and Patrick D. Boyle, Esq., Skjold Parrington, PA, Minneapolis, MN, on behalf of Plaintiff Robert Laurent.

Brian L. Vander Pol, Esq., Peter W. Carter, Esq., and Dustin Adams, Esq., Dorsey & Whitney LLP, Minneapolis, MN, on behalf of Defendants Mortgage Electronic Registration Systems, Inc. and U.S. Bank, N.A.

---

## I.  INTRODUCTION

On December 20, 2011, the undersigned United States District Judge heard oral argument on Defendant Mortgage Electronic Registration Systems, Inc., and U.S. Bank, N.A.'s (collectively "Defendants") Motion to Dismiss [Docket No. 6].  Plaintiff Robert Laurent ("Laurent") opposes the motion.  For the reasons set forth below, Defendants' Motion to Dismiss is granted.

## II.  BACKGROUND[1]

In 2005, Laurent bought a home and secured a mortgage from Defendants.  Notice of Removal [Docket No. 1] Ex. A ("Complaint") ¶¶ 5–8.  Due to his subsequent divorce and the

---

[1]  In considering Defendants' Motion to Dismiss, the Court takes the facts alleged in Laurent's Complaint to be true.  See Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994).

downturn in his housing restoration business, Laurent defaulted on his monthly mortgage payments in early 2010.  Id. ¶¶ 9–13.  On September 10, 2010, he was informed by U.S. Bank, N.A. ("U.S. Bank") that his mortgage had been referred for foreclosure proceedings.  Id. ¶ 19.  Around the same time, U.S. Bank also notified Laurent of his potential eligibility for a modification under the Home Affordable Modification Program ("HAMP").  Id. ¶ 18.  HAMP was created in 2009 in response to the mortgage foreclosure crisis in this country.  Making Home Affordable Program, Handbook for Services of Non-GSE Mortgages, version 3.3, ("Handbook v.3.3) 11–12 (Sept. 1, 2011), https://www.hmpadmin.com/portal/programs/docs/hamp_servicer/ mhahandbook_33.pdf.

On September 22, 2010, Laurent received notice that a sheriff's sale of his property had been scheduled to occur.  Compl. ¶ 24.  Laurent timely filed his HAMP modification application, and on October 5, 2010, U.S. Bank acknowledged receipt of the materials and stated it was reviewing the information.  Id. ¶¶ 25–26.

In November 2010, U.S. Bank approved Laurent to enter into a trial period plan ("TPP") under HAMP.  Id. ¶ 31.  U.S. Bank halted foreclosure proceedings during this period, and Laurent paid the modified trial payments.  Id. ¶¶ 34–39.  Laurent contacted U.S. Bank to inquire about the status of his HAMP modification, and U.S. Bank informed him that "they were backed up with modification applications and had not yet prepared his permanent modification agreement."  Id. ¶¶ 40–41.  Laurent continued to make the reduced payments (at least seven in all) while awaiting a decision from U.S. Bank, and in June 2011 U.S. Bank notified him that it would not allow a permanent HAMP modification of his mortgage.  Id. ¶¶ 44–45, 48.  Specifically, U.S. Bank denied the modification because it would lead to "excessive

forbearance" of the outstanding unpaid principal – U.S. Bank could not create an affordable monthly payment (less than 31% of Laurent's monthly gross income) without changing terms beyond the requirements of HAMP.  Notice of Removal [Docket No. 2] Ex. K ("June 3, 2011 Letter")

U.S. Bank refused to receive subsequent reduced mortgage payments, instead requiring Laurent to resume his regular mortgage payments.  Id. ¶¶ 49–50.  The sheriff's sale was scheduled for August 16, 2011 but was stayed pending resolution of this litigation.  Id. ¶ 51; Pl.'s Mem. in Opp'n to Mot. to Dismiss [Docket No. 10] 7.

## III.  DISCUSSION

### A.  Motion to Dismiss Standard

A motion to dismiss a complaint for failure to state a claim is governed by Rule 12 of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 12(b)(6).  In considering a Rule 12(b)(6) motion, the court views the pleadings in the light most favorable to the nonmoving party and treats the alleged facts as true.  See Ossman v. Diana Corp., 825 F. Supp. 870, 879-80 (D. Minn. 1993).  Conclusions of law made by the nonmoving party, however, are not "blindly accept[ed]." Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990).  A Rule 12(b)(6) motion to dismiss is granted when the factual allegations, even assumed to be true, do not entitle that party to relief.  See, e.g., Taxi Connection v. Dakota, Minn. & E. R.R. Corp., 513 F.3d 823, 826-27 (8th Cir. 2008).

Pleadings must "contain a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  Rule 8(a) has been interpreted to mean that a pleading must allege "enough facts to state a claim of relief that is plausible on its face."  Bell Atl. Corp.

v. Twombly, 550 U.S. 544, 570 (2007).  To satisfy the standard of facial plausibility, a claim

must "plead[] factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

This plausibility determination is "context-specific" and "requires the reviewing court to draw

on its judicial experience and common sense."  Id. at 1950.  However, "where the well-pleaded

facts  do not permit the court to infer more than the mere possibility of misconduct, the

complaint has alleged—but not 'shown'—'that the pleader is entitled to relief.'"  Id. (quoting

Fed. R. Civ. P. 8(a)(2)).

## B.      Plaintiff's Claims Fail as a Matter of Law

### 1.      Breach of Contract

For a breach of contract claim, Minnesota law requires the following elements:  (1) the

formation of a contract; (2) the performance of conditions precedent by the plaintiff; and (3) the

breach of the contract by the defendant.  Briggs Transp. Co. v. Ranzenberger, 217 N.W.2d 198,

200 (Minn. 1974).  Contract formation requires offer, acceptance, and consideration.  Pine River

State Bank v. Mettille, 333 N.W.2d 622, 626–27 (Minn. 1983).  Credit agreements must be "in

writing, express[] consideration, set[] forth the relevant terms and conditions, and [be] signed by

the creditor and debtor."  Minn. Stat. 513.33, subd. 2.  Specifically, these contracts must include

such relevant terms as interest rates and permanent monthly principal and interest payments.  See

Olivares v. PNC Bank, Civ. No. 11-1626, 2011 WL 4860167, *5 (Oct. 13, 2011).

Laurent's claim  for breach of contract fails to satisfy Minn. Stat. 513.33, subd. 2.

Laurent argues that the November 2010 letter formed a valid enforceable contract.  Notice of

Removal Exhibits [Docket No. 2] Ex. H ("Nov. 2010 letter").  While the November 2010 letter

4

was indeed in writing, it is not a valid credit agreement because it fails to set forth the relevant

terms and conditions of a modified home loan as required under Minn. Stat. § 513.33, subd. 2.

Specifically, the letter clearly states it is a trial period plan, and it includes only payment

amounts and due dates for three trial period payments.  This November 2010 letter does not

express the requisite relevant terms of interest rates, principal and interest payments, and as a

result fails to form an enforceable contract.  Therefore, Laurent's breach of contract claim is

dismissed with prejudice.

###    2.    Promissory Estoppel

Promissory estoppel under Minnesota law requires proof that (1) a clear and definite

promise was made, (2) the promisor intended to induce reliance and the promisee in fact relied to

his or her detriment, and (3) the promise must be enforced to prevent injustice.  Martens v. Minn.

Mining & Mfg. Co., 616 N.W.2d 732, 746 (Minn. 2000).  Minnesota law, however, provides that

implied-in-fact oral promises to modify loans fail as a matter of law.  Minn. Stat. § 513.33, subd.

3(a) (an unwritten "agreement by a creditor to . . . enter[] into a new credit agreement, [or]

forbear[] from exercising prior credit agreements" does "not give rise to a claim that a new credit

agreement is created.");  see also Hinden v. Am. Bank of North, No. A09-404, 2009 WL

4573909, at *2–3 (Minn. Ct. App. Dec. 8, 2009) (barring a promissory estoppel claim because

the oral credit agreement failed to satisfy Minn. Stat. § 513.33).

Laurent claims that Defendants made a "clear and definite promise to Plaintiff regarding

his enrollment in a permanent Modification."  Compl. ¶ 83.  Because the November 2010 letter

does not constitute a valid written agreement, however, Laurent's promissory estoppel claim also

fails.  Minnesota law requires any new credit agreement to be in writing.  Minn. Stat. § 513.33,

subd. 3(a).  Laurent is barred from asserting a promissory estoppel claim where the alleged new credit agreement lacks sufficient writing.  Grueling v. Wells Fargo Home Mortg., Inc., 690 N.W.2d 757, 761–62 (Minn. App. 2005).  Allowing new credit agreements to supplant prior valid ones without meeting the requirements of Minn. Stat. 513.33, subd. 2, would "make an easy end-run around the [statute]."  Brisbin v. Aurora Loan Svcs., LLC, No. 10-2130, 2011 WL 1641979, at *3 (D. Minn. May 2, 2011).  Accordingly, Laurent's promissory estoppel claim must be dismissed with prejudice.

Laurent argues that his claims of breach of contract and promissory estoppel are saved from dismissal by the doctrines of equitable estoppel and part performance.  Equitable estoppel places enforceable agreements outside the Statute of Frauds upon proof of the following elements: (1) conduct which amounts to a representation or concealment of material facts; (2) the party estopped must have actual or imputed knowledge of the facts at the time of the conduct; (3) the truth must be unknown to the other party when the conduct was done and when he acted upon it; (4) the conduct must be done with the intention or expectation that it will be acted upon by the other party; (5) the conduct must be relied upon and acted upon by other party; and (6) the reliance must cause him to suffer a loss.  Lunning v. Land O'Lakes, 303 N.W.2d 452, 457 (Minn. 1980).  Here, Laurent has failed to establish that Defendants represented or concealed material facts, or that his reliance caused him to suffer loss.  The November 2010 letter stated the trial period payment plan was the "first step toward qualifying for more affordable mortgage payments," that it was "only . . . temporary," and that the "existing loan and loan requirements remain in effect and unchanged during the trial period."  Nov. 2010 letter 40–41.  Additionally, the letter further states that the loan will be modified permanently when the trial period payments

are made on time and once the Defendants confirm HAMP eligibility.  Id. 41.  None of these

statements represent or conceal a material fact regarding the trial period payment plan.

Additionally, Laurent has failed to show how his reliance caused him to suffer a loss, since he

was able to pay a reduced amount during the trial period.  Any amount he now owes on his

mortgage is according to the original, valid mortgage agreement, so Laurent's purported reliance

was not detrimental here.

Laurent also fails to establish that the fraud theory of the doctrine of part performance

applies or removes the alleged agreement from the scope of the statute of frauds or the

Minnesota Credit Agreement Statute.  The fraud theory of part performance applies "where

plaintiff shows that his acts of part performance in reliance upon the contract have so altered his

position that he will incur unjust and irreparable injury in the event that defendant is permitted to

rely on the statute of frauds."  Burke v. Fine, 51 N.W.2d 818, 820 (Minn. 1952) (citing Brown v.

Hoag, 29 N.W. 135, 138–39 (Minn. 1886)).  Laurent, however, has shown no detrimental

reliance.  Although he alleges that he suffered irreparable injury in the foreclosure of his home,

this process was already started prior to the trial period plan due to his previous defaults on the

original mortgage.  The trial period plan stayed the foreclosure process, but Defendants'

determination that Laurent was ineligible for a permanent modification did not irreparably harm

him – it only reinstated the foreclosure process which had started with his first defaults in early

2010. Compl.  ¶¶ 9–13, 19.  Therefore, neither the fraud theory of part performance nor the

doctrine of equitable estoppel are applicable here.

### 3.   Fraud & Negligent Misrepresentation

Claims of misrepresentation must be pled with particularity.  See Fed. R. Civ. P. 9(b)

("[A] party must state with particularity the circumstances constituting fraud or mistake.").  This

heightened particularity standard requires pleadings to allege the "who, what, when, where, and

how" of the fraud.  United States ex. rel. Joshi v. St. Luke's Hosp., Inc., 441 F.3d 552, 556 (8th

Cir. 2006) (citation omitted).  Both negligent and fraudulent representation claims must be pled

with this same particularity.  See Trooien v. Mansour, 608 F.3d 1020, 1028 (8th Cir. 2010).

Minnesota law requires a claim for fraudulent misrepresentation to allege the following:

(1) a false representation by a party of a past or existing material fact susceptible of knowledge;

(2) the representation was made with the knowledge of its falsity or made as of the party's own

knowledge without knowing whether it was true or false; (3) it was made with the intention to

induce another to act in reliance thereon; (4) the representation caused the other party to act in

reliance thereon; and (5) the party suffered pecuniary damage as a result of the reliance.  See

Best Buy Stores, L.P. v. Developers Diversified Realty Corp., 636 F. Supp. 2d 869, 887 (D.

Minn. 2009).  When the representation refers to a future event, the party making the

representation must be proved to have "had no intention of performing when the promise was

made."  Martens, 616 N.W.2d at 747.  Negligent misrepresentation claims differ only in the

required state of mind, necessitating a showing that the defendant "supplie[d] false information"

and "fail[ed] to exercise reasonable care or competence in obtaining or communicating the

information."  Trooien, 608 F.3d at 1028 (citation omitted).

Laurent contends that Defendants represented he was "permanently enrolled in the

Modification following timely completion of the Plan and submission of Plaintiff's modification

payments," and that Defendants knew those representations were false or failed to exercise

reasonable care in communicating that information.  Compl. ¶¶ 72–73, 79.  However, Laurent

has failed to establish either a false representation was made or that he detrimentally relied on

such a representation.  The November 2010 letter states that "You are approved to enter into a

trial period plan under [HAMP]" and that "[a]fter all trial period payments are timely made and

you have submitted all the required documents, your mortgage would then be permanently

modified."  Id. 40.  However, the letter also states that "[t]his is only a temporary Trial Period

Plan," and that "[o]nce we confirm you are eligible for a Home Affordable Modification and you

make all your trial period payments on time, we will send you a modification agreement

detailing the terms of the modified loan."  Id. 41.  Laurent has failed to establish that Defendants

falsely represented that the trial period was in fact permanent or automatic upon his submission

of the modified payments.  Thus, he has not established a key element of his claims of fraud and

negligent misrepresentation.

Moreover, Laurent has also failed to prove that he detrimentally relied on Defendants'

representations.  Laurent had already defaulted on his mortgage payments, foreclosure

proceedings had already been initiated, and a sheriff's sale had been scheduled prior to his

participation in the trial period plan.  Compl. ¶¶ 9–13, 19, 24.  In reliance on Defendants'

representations, Laurent claims he made seven reduced mortgage payments, the foreclosure

proceedings were halted, and the sheriff's sale postponed.  Id. ¶¶ 34–39, 45.  Laurent asserts that

his reliance was detrimental because he incurred late charges, his credit score was damaged, and

foreclosure proceedings were initiated against him.  Mem. Opp'n to Mot. to Dismiss 27.

Because he had already defaulted on his original mortgage payments, however, Laurent has not

shown how his reliance on Defendants' representations was detrimental.  The clear language of

the November 2010 letter states that it establishes a "trial period" which is not "permanent," precluding Laurent from establishing his reliance was reasonable.  For these reasons, Laurent's claims of fraud and negligent misrepresentation are dismissed with prejudice.

    **4.**    **Breach of Mortgagee Duty**

Under Minnesota law, "the mortgagee . . . may fairly and in good faith purchase the premises so advertised, or any part thereof, at such sale."  Minn. Stat. § 580.11.  "The statute itself imposes no fiduciary duty on the mortgagee nor does it concern a mortgagee's actions prior to foreclosure."  <u>Cox v. Mortg. Elec. Registration Sys., Inc.</u>, 794 F.Supp.2d 1060, 1065 (D. Minn. 2011).  Rather, the statute at most proscribes bad faith acts by a mortgagee after a foreclosure sale.  <u>Scott v. Wells Fargo Bank, N.A.</u>, Civ. No. 10-3368, 2011 WL 381766 (D. Minn. Feb. 2, 2011).

Laurent's breach of mortgagee duty claim falls short because no foreclosure sale has yet occurred.  As Minn. Stat. § 580.11 only governs a mortgagee's duty of good faith at a foreclosure sale, and as that sale has not yet occurred here, Laurent's claim is dismissed with prejudice.

    **5.**    **Unjust Enrichment**

A claim of unjust enrichment requires a showing that "another party knowingly received something of value to which he was not entitled, and that the circumstances are such that it would be unjust for that person to retain the benefit."  <u>Schumacher v. Schumacher</u>, 627 N.W.2d 725, 729 (Minn. App. 2001).  A claim of unjust enrichment does not apply, however, "where the rights of the parties are governed by a valid contract."  <u>M.M. Silta, Inc. v. Cleveland Cliffs, Inc.</u>,

616 F.3d 872, 880 (8th Cir. 2010) (quoting U.S. Fire Ins. Co. v. Minn. State Zoological Bd., 307

N.W.2d 490, 497 (Minn. 1981)).

Laurent's claim of unjust enrichment is unwarranted here.  First, the relationship between

Defendants and Laurent was governed by a valid contract, the original mortgage agreement; as

such, unjust enrichment does not apply.  Second, whatever value Defendants received under the

reduced mortgage payments during the trial period plan were benefits to which it was entitled

under the mortgage agreement.  The November 2010 letter expressly stated that the "existing

loan and loan requirements remain in effect and unchanged during the trial period."  Id. 41.

Although Laurent argues that Defendants were unjustly enriched in the amount of approximately

$12,560.10, Mem. Opp'n to Mot. to Dismiss 22, Defendants were entitled to these mortgage

payments and therefore were not unjustly enriched.  Therefore, Laurent's unjust enrichment

claim fails and is dismissed with prejudice.

## IV.  CONCLUSION

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED:**

1.      Defendants' Motion to Dismiss [Docket No. 6] is **GRANTED**; and

2.      All claims alleged in the Complaint are **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.


                                        BY THE COURT:


                                        _____s/Ann D. Montgomery_____
                                        ANN D. MONTGOMERY
                                        U.S. DISTRICT JUDGE

Dated:  December 30, 2011.

11